**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

JOHN A. HORVATH

       Plaintiff,

      v.                                  Civil Action No. 1:09CV1129

THE BANK OF NEW YORK, N.A.
Trustee for the Certificate Holders, CWALT, Inc.
Attention: Corporate Trust Administration
Alternative Loan Trust 2006-45T1, Mortgage
Pass-Through Certificates, Series 2006-45T1

And

CWALT, INC., ALTERNATIVE LOAN TRUST 2006-45T1,

And

BAC HOME LOANS SERVICING, LP,
a sub division of Bank of America, f/k/a
COUNTRYWIDE HOME LOANS SERVICING LP,

And

AMERICA'S WHOLESALE LENDER

And

EQUITY TRUSTEES, LLC.

And

SAMUEL I. WHITE, P.C.

       Defendants.

**FIRST AMENDED COMPLAINT**

    COMES NOW, the Plaintiff, John Horvath, by and through Counsel, and for his First

Amended Complaint states as follows:

## PARTIES

1. Plaintiff is a resident of the Commonwealth of Virginia, and is the lawful and sole title holder of 11599 Water Oak Ct, Woodbridge, Virginia 22192 (hereinafter, the "Property").

2. Defendant America's Wholesale Lender (hereinafter "AWL") is a fictitious name for Countrywide Home Loans, Inc. Defendant AWL is authorized to and regularly does transact business in the Commonwealth of Virginia, including originating mortgages on real property in the Commonwealth, specifically including the Property.

3. Defendant The Bank of New York, N. A. as Trustee, etc. (hereinafter "BoNY"), upon information and belief is a federally chartered bank, whose principal place of business is located in New York City, New York. Defendant BoNY regularly transacts business in the Commonwealth of Virginia including originating, buying, selling and/or securitizing mortgages, and foreclosing on property it purports to have the authority to foreclose throughout the Commonwealth of Virginia, specifically including the Property.

4. Defendant CWALT, Inc.., Alternative Loan Trust 2006-45T1 (hereinafter "CWALT Trust") is a common law trust formed under the laws of New York, whose principal place of business, upon information and belief, is located in Calabasas, CA. CWALT Trust does business in the Commonwealth of Virginia, including originating, buying, selling and/or securitizing mortgages, and foreclosing on property it purports to have the authority to foreclose throughout the Commonwealth of Virginia, specifically including the Property.

5. Defendant Countrywide Home Loan Servicing, LP (hereinafter "Countrywide") is a limited partnership existing and organized under the laws of the State of Texas, whose principal place of business is located in Plano, Texas. Defendant Countrywide is now known as "BAC Home Loan Servicing, LP," a sub-division of Bank of America. Countrywide is licensed to and regularly does transact business in the Commonwealth of Virginia including originating,

buying, selling and/or securitizing mortgages, and foreclosing on property it purports to have the authority to foreclose throughout the Commonwealth of Virginia, specifically including the Property.

6. Defendant Equity Trustees, LLC (hereinafter "Equity") is a limited liability company existing and organized under the laws of the State of Virginia, whose principal place of business is located in Bethesda, MD. Defendant EQUITY is licensed to and regularly does transact business in the Commonwealth of Virginia, including service as trustee on security deeds of trust and conduct of foreclosures, specifically including the Property.

7. Defendant Samuel I. White, P.C. (hereinafter "SiW") is a professional corporation existing and organized under the laws of the Commonwealth of Virginia, whose principal place of business is located in Virginia Beach, VA.  Defendant SiW is licensed to and regularly does transact business in the Commonwealth of Virginia.  SiW is only a party to this complaint given the Quiet Title claim.  SiW was the original trustee, and the trustee holds barely legal title.

## JURISDICTION AND VENUE

8. This Court may exercise personal jurisdiction over Defendants in this action because they transacted business, including the transactions at issue in the present matter, within the Eastern District of Virginia.

9. Venue is appropriate in this Court pursuant to Virginia code 8.01-261(3)(b) because this suit concerns real property located in Prince William County, Virginia.  Further, this matter was removed to this District Court by the Defendants.

# FACTS

10. On October 23, 2006, Plaintiff entered into two (2) separate mortgage loan transactions to refinance his home located at 11599 Water Oak Ct., Woodbridge, VA 22192 (the "Property").

11. To effectuate the mortgage loan transactions, purchase, Plaintiffs executed two (2) promissory notes and two (2) deeds of trust as security interests on the property.

12. At closing, Plaintiff signed a First "Deed of Trust" and First Promissory Note, which named AWL as Lender and SiW as Trustee.

13. The First Promissory Note was for the amount of $650,000.00

14. The Second Promissory Note was for the amount of $110,000.00, and named First Magnus Financial Corporation as the Lender (hereinafter "First Magnus" which is no longer in existence).

15. After executing the loan documents, Plaintiff began paying his loan payments to AWL.

16. Plaintiff is the owner and sole title-holder of the Property, subject to a lien in favor of Defendant AWL as evidenced by the Deed of Trust in the land records.

17. In 2008, Plaintiff began receiving demands for payment and threats of foreclosure from Defendants Countrywide and Equity, who stated that the loan was allegedly in default.

18. In seeking payment on the alleged debt Defendants Countrywide and Equity were acting as debt collectors.

19. On or about December 30, 2008, Plaintiff through Counsel sent a "Qualified Written Request" ("QWR") pursuant to the FDCPA and §6 of RESPA (12 U.S.C. 2605) to various parties to determine the legal status of both loans and their current owners to determine the true party in interest thereof.

20. By letter dated February 18, 2009, and received by Plaintiff on March 3, 2009, Defendant Countrywide responded to the QWR on both loans, but refused to identify the current owner of the first or second trust note obligation, the legal status of the obligation, and the correct amount of the debt owed, among other failures as requested and required by the FDCPA.

21. Defendant Countrywide, in its February 18, 2009, response to the QWR provided a copy of the first trust Note which contains no endorsements to anyone from AWL and no further documents were provided identifying the present and actual owner of the obligation or true party in interest.

22. Defendant Countrywide, in its February 18, 2009, response to the QWR provided a copy of the second trust Note which contains no endorsements to anyone from First Magnus and no further documents were provided identifying the present and actual owner of the obligation or true party in interest.

23. At this point Plaintiff had no information regarding the entity to which the obligation on the first trust loan (taken out with AWL) was owed, or to whom the obligation on the second trust note (taken out with First Magnus) was owed.

24. By letter dated July 23, 2009, Defendant Equity identified itself as a debt collector and advised the Plaintiff that his home was scheduled to be foreclosed on August 14, 2009.

25. Said letter came with an attachment - a Deed of Substitute Trustee dated February 10, 2009 -- wherein Defendant Countrywide, executed the document, as, it appears, on behalf of "The Bank of New York" as its authorized servicing agent.  The document is signed by Rachel Bayard of Bierman Geesing & Ward, the affiliated law firm for Equity Trustees, as attorney in fact for Countrywide Home Loans Servicing, LP.

26. The party of the first part is identified as "The Bank of New York as Trustee for the Certificateholders CWALT, Inc., Alternative Loan Trust 2006-45T1, Mortgage Pass-Through Certificates, Series 2006-45T1 ("The Bank of New York")."

27. Upon information and belief, the first trust Note was placed in a loan trust, pool, or REMIC (real estate mortgage investment conduit), in this case the pool being Defendant CWALT Trust.

28. Upon information and belief, the second trust Note was placed in a loan trust, pool, or REMIC (real estate mortgage investment conduit), in the case of the second trust Note, the pool being an as of yet unidentified pool or trust.

29. A loan trust, or REMIC, like CWALT, is a tax-favored entity set up to optimize the revenues of a securitized mortgage pool, and the returns to interested investors and Certificate Holders.

30. As with all loan trusts or REMICs, CWALT Trust asserts in SEC filings associated with the loan trust, that it will purchase interest rate swaps, credit default swaps, default insurance, and other credit derivatives and credit enhancement policies for this Note, and all others within the securitized pool.

31. As with all loan trusts or REMICS, CWALT TRUST has sold the interest in the Note(s) to certificate holders.

32. As with all loan trusts or REMICS, CWALT's SEC filings associated with the loan trust / REMIC state that when a given note default is declared, CWALT Trust will receive payment from one or more of the credit enhancements, default insurance policies, credit default swaps, and/or credit derivatives written against/on the note.

33. Any alleged obligation of Plaintiff was satisfied once the default was declared, because the various credit enhancement policies paid out making any injured party whole.

34. Defendant Equity, by letter dated July 23, 2009, advised Plaintiff that his home would be foreclosed on August 14, 2009.

35. Plaintiff advised Defendant Equity that the debt was contested, and demanded that the foreclosure sale be cancelled.

36. By proceeding with the aforementioned demands for payment, threats of foreclosure, and actual foreclosure, Defendants Countrywide and Equity were, and at all times material herein have been, in violation of the FDCPA by demanding money from Plaintiff when no debt was owed.

37. Defendants, having failed to identify and prove the true owner of the Promissory Note and/or the true party in interest, Plaintiff refused to pay and Defendants proceeded to foreclose on Plaintiff's Property.

38. Defendant Equity is in breach of its fiduciary duty to Plaintiff to remain impartial as required by Virginia law.

39. The actions of the Defendants Countrywide and Equity will result in significant harm to the Property of Plaintiff - the loss of title to Plaintiff's property - unless the foreclosure that occurred on August 14, 2009, is declared void by the Court, and the unlawful detainer action for possession, if any, is stayed.

40. Plaintiff disputes any debt is owed to Defendant BoNY, CWALT Trust, Countrywide, or any other Defendant.

41. Neither CWALT Trust, BoNY, Countrywide nor any other Defendant has paid any taxes on the interest income generated by Plaintiff's first or second loan/Note for the 2006 tax year.

42. Neither CWALT Trust, BoNY, Countrywide nor any other Defendant has paid any taxes on the interest income generated by Plaintiff's first or second loan/Note for the 2007 tax year.

43. Neither CWALT Trust, BoNY, Countrywide nor any other Defendant has paid any taxes on the interest income generated by Plaintiff's first or second loan/Note for the 2008 tax year.

44. In violation of the FDCPA, and to create the appearance of authority to conduct the scheduled foreclosure, Defendants Countrywide and Equity executed, notarized, and filed with the land records a "Deed of Appointment of Substitute Trustee" dated February 10, 2009.

45. The Deed of Appointment of Substitute Trustee states:

> WHEREAS, said Deed of Trust provides that the holder of the Note shall have the power and authority to appoint, by instrument duly executed, acknowledged, and recorded among the Land Records aforesaid, substitute trustee(s) in the place and stead of the trustee(s) named therein;

46. Nowhere in VA Code §55-59 or the Deed of Trust is that language found or supported.

47. Defendant Equity has filed *hundreds* of Deeds of Appointment of Substitute Trustee with this County's Land Records substituting themselves as "Trustee" or "Substitute Trustee," citing this same fallacious language that is completely unsupported by the Deed of Trust or Virginia law and permitting them to proceed to foreclosure on any property.

48. The Deed of Trust clearly states in paragraph twenty-four (24) that the "Lender" may remove and appoint substitute trustees.

49. Rachel Bayard "…of Bierman, Geesing, & Ward, LLC" asserts under oath that she is executing the Deed of Appointment of Substitute Trustee on behalf of Countrywide, appointing Equity Trustees, a Bierman Geesing affiliate, and also asserts that she is signing the

document on behalf of BoNY, who is signing as trustee of CWALT Trust, which is itself acting on behalf of unknown, undetermined, and undisclosed certificate holders.

50. By the language contained in the Deed of Trust itself, Defendant BoNY does not qualify as the "Lender."

51. By the language contained in the Deed of Trust itself, Defendant Countrywide does not qualify as the "Lender."

52. By the language contained in the Deed of Trust itself, CWALT Trust does not qualify as the "Lender."

53. Defendant Equity, in violation of its fiduciary and impartial obligations under the Deed of Trust has failed to perform any due diligence to ensure that the entity (albeit unknown) invoking the power of sale under the Deed of Trust actually has the authority and standing to do so.

54. The fiduciary obligation of the trustee requires Equity to confirm that a party taking action under the Deed of Trust, in fact has authority to so act, especially when the party acting is not a party to the Deed of Trust.

55. In preparing the Deed of Substitute Trustee, Defendant Equity has accepted, without question, the authority of its own employee, Rachel Bayard, an alleged Operations Manager for Countrywide, to sign on behalf of BoNY; further, that Countrywide is authorized to act as "attorney-in-fact" for Countrywide and BoNY; further, that BoNY has authority to act as trustee for CWALT Loan Trust; and, further, that CWALT Trust has authority to <u>enforce the Deed of Trust</u> on behalf of the unknown, undetermined, unidentified, and undisclosed certificate holders; AND most importantly, that this daisy chain of authority is allowed under the Deed of Trust which is the subject of this litigation.

56. Whatever contractual arrangement third parties enter into with respect to their securitization of the subject Note is their business.

57. However, Plaintiff is a party to a security instrument, a contractual agreement called the Deed of Trust.  No actions of third parties may amend or change the terms of the contract to which Plaintiff is a party without Plaintiff's consent.

58. Further, whatever arrangements these third parties may have regarding their contractual arrangements amongst themselves, have nothing to do with the obligations Plaintiff may have under the Deed of Trust.

59. The land records of Prince William County suggest a security interest is held in Plaintiff's property by Defendant AWL on the first Note via the Deed of Trust.

60. The land records of Prince William County suggest a security interest is held in Plaintiff's property by First Magnus on the second Note via the Deed of Trust.

61. There are no further records of any security interest in Plaintiff's property in the county land records.

62. There is no evidence on the copy of the Note provided by Countrywide in response to the QWR to indicate any party other than AWL has a right to enforce the First Deed of Trust.

63. There is no evidence on the copy of the Note provided by Countrywide in response to the QWR to indicate any party other than First Magnus has a right to enforce the Second Deed of Trust.

64. Plaintiff disputes any money is owed to Defendants CWALT, BONY, Countrywide, or any other Defendant.

# COUNT I
## (DECLARATORY ACTION - FIRST TRUST NOTE)
No Standing to Enforce the First Promissory Note - Virginia Code Ann. §8.01-184
(Versus Defendants AWL, CWALT Trust, BoNY, Countrywide)

65. Plaintiff realleges and incorporates the allegations of all previous paragraphs of the Complaint as if stated fully herein.

66. None of the Defendants (AWL, CWALT Trust, BoNY or Countrywide qualify as the Lender, none has any authority under the Deed of Trust to enforce the terms thereof, none is the "true party in interest" (the person to whom the obligation is owed) as required by Rule 17 of the Federal Rule of Civil Procedure and <u>Harmon v. Sadjadi</u>, 639 S.E.2d 294, 299 (Va. 2007)) and none can prove the existence of an injury (See VA Code §8.01-147 / Article III of the US Constitution) to attempt to either: i.) collect on the debt or, ii.) to declare a default or, iii) invoke the power of sale on the indebtedness which is the subject of this Complaint.

67. None of the named Defendants can demonstrate or establish that a default exists with respect to Plaintiff's promissory note.

68. In the alternative, should it be determined that one of the named Defendants can establish some right of ownership of the applicable promissory note, such Defendant still cannot demonstrate standing or injury to establish standing as the applicable securitized mortgage pool has already been paid out by one or more of the following: i.) credit enhancement policies, ii.) over-collateralization, iii.) loan loss reserves pay-outs, iv.) mortgage default insurance policies pay-outs, v.) credit default swaps , and/or vi.) other credit derivatives.  These payouts satisfied the alleged indebtedness which is the subject of this Complaint.

69. In the case of pay-outs and/or or third party pay-outs and settlements, such pay-outs no longer confer standing on the supposedly and previously aggrieved party as any alleged injury has been cured, as double or triple recovery is not allowed.

70. Double recovery is specifically prohibited in Virginia (Va. Code § 8.01-147) and by the Supreme Court (Summers, et al. *v*. Earth Island Institute, 555 U. S. ____ (2009)(Slip Opinion No. 07–463, March 3, 2009).

WHEREFORE, the Plaintiff demands equitable relief from Defendants AWL, CWALT Trust, BoNY and Countrywide, as follows: (1) That the foreclosure "Deed of Sale" be voided, struck from the land records, and/or otherwise set aside; (2) Pay all costs associated with and incurred through the prosecution of this action; (3) The dismissal of any and all ejectment actions against any class member and /or the Plaintiffs; (4) That this Court declare that none of the Defendants has any right, title, or interest in the First Promissory note; (5) That any Defendant who has reported negative information to any credit reporting agency be ordered to request the removal of said negative reporting; and (6) Such other relief as this Honorable Court deems necessary. Plaintiff also demands injunctive relief or a temporary restraining order stating: that any unlawful detainer proceedings in Prince William County are stayed until this Court is satisfied that the proper party declared a default, removed/appointed substitute trustees, accelerated the Note, and invoked the power of sale.

**COUNT II**
(DECLARATORY ACTION - SECOND TRUST NOTE)
No Standing to Enforce the Second Promissory Note - Virginia Code Ann. §8.01-184
(Versus Defendant Countrywide)

71. Plaintiff realleges and incorporates the allegations of all previous paragraphs of the Complaint as if stated fully herein.

72. None of the named Defendants qualifies as the Lender, none has any authority under the Deed of Trust to enforce the terms thereof, none is the "true party in interest" (the person to whom the obligation is owed) as required by Rule 17 of the Federal Rule of Civil Procedure and Harmon v. Sadjadi, 639 S.E.2d 294, 299 (Va. 2007)) and none can prove the existence of an injury of any

12

purported "Lender" (See Va. Code § 8.01-147 / Article III of the US Constitution) to attempt to either: i.) collect on the debt or ii.) to declare a default / invoke the power of sale on the indebtedness which is the subject of this Complaint.

73. In the alternative, should it be determined that one of the named Defendants can establish some right of ownership of the applicable promissory note, such Defendant still cannot demonstrate standing, or injury to establish standing as the applicable securitized mortgage pool has already been paid out by one or more of the following provisions since: i.) credit enhancement policies, ii.) over-collateralization, iii.) loan loss reserves pay-outs, iv.) mortgage default insurance policies pay-outs, v.) credit default swaps, and vi.) other credit derivatives have paid out and/or satisfied the alleged indebtedness which is the subject of this Complaint.

74. In the case of pay-outs and/or or third party pay-outs and settlements, such pay-outs no longer confer standing on the supposedly and previously aggrieved party as any alleged injury has been cured, as double or triple recovery is not allowed.

75. Double recovery is specifically prohibited in Virginia (Va. Code §8.01-147) and by the Supreme Court (Summers, et al. v. Earth Island Institute, 555 U. S. ____ (2009)(Slip Opinion No. 07–463, March 3, 2009).

76. When Countrywide identifies the entity which claims an interest in the second trust Note (were it not Countrywide itself), Plaintiff will move to amend to add said entity to this Complaint.

WHEREFORE, the Plaintiff demand equitable relief from Defendant Countrywide, as follows: (1) Pay all costs associated with and incurred through the prosecution of this action; (2) That this Court declare that none of the Defendants has any right, title, or interest in the Second Promissory note; (3) That any Defendant who has reported negative information to any credit reporting agency be ordered to request the removal of said negative reporting; and (4) Such other relief as this Honorable Court deems necessary.

## COUNT III
### (BREACH OF FIDUCIARY DUTY)
(Versus Defendant Equity)

77. Plaintiff realleges and incorporates the allegations of all previous paragraphs of the Complaint as if stated fully herein.

78. Defendant Equity has engaged in collection efforts against the Plaintiffs for an alleged default under the first trust Promissory Note.

79. Defendant failed to perform reasonable due diligence when the request to proceed to foreclosure was made by Defendant CWALT Trust, BoNY, Countrywide, or other unknown entity.

80. Defendants breached their fiduciary duty by failing to remain impartial.

81. Defendant Equity has engaged in extensive efforts to collect an alleged obligation from Plaintiff and has wrongfully threatened, scheduled and foreclosed on Plaintiff's home.

WHEREFORE, Plaintiff respectfully requests that this court award him damages against Defendant Equity in the amount of $500,000.00, plus reasonable attorney's fees and costs. Plaintiff also demands injunctive relief or a temporary restraining order stating: that any unlawful detainer proceedings in Prince William County are stayed until this Court is satisfied that the proper party declared a default, removed/appointed substitute trustees, accelerated the Note, and invoked the power of sale.

## COUNT IV
### (QUIET TITLE)
(Versus "any competing interest" - Maine v. Adams 277 Va. 230 (2009))

82. Plaintiff realleges and incorporates the allegations of all previous paragraphs of the Complaint as if stated fully herein.

83. Plaintiff is the only party to this matter that can prove legal and equitable ownership interest in the Property, pursuant to a Deed duly recorded among the Land Records of Prince William County, Virginia, which Deed antedates the Deed of Trust.

84. The land records reflect liens on Plaintiff's property in the name of Defendant AWL on each promissory note.

85. CWALT Trust split the first trust Note into pieces and sold it to investors in the form of certificates or other securities.

86. The second trust note was transferred into a REMIC as well, and split into pieces that were sold to investors in the form of certificates or other securities.

87. These "securities" were sold on the secondary market. Said secondary market is unregulated. Thus, there is no way to identify the counter-parties with an interest in these Notes, or which parties have purchased an interest in the Notes through credit default swaps, collateralized debt obligations, or credit enhancement policies.

88. Given the splitting, selling, trading, and insuring of the pieces of the Notes on the secondary market, the Deeds of Trust are split from the Notes and are unenforceable, and any liens should be struck from the land records.

89. Further, following Virginia case law, any individual Defendant who claims a competing interest must prove said claim or be forever barred from asserting it.

90. Any "interest" includes that a purported "true party in interest" must prove the existence of an injury. Given the Note was declared (by whom, Plaintiff does not know) to be in default, the default insurance and credit enhancements of the trust/REMIC have been triggered, and these Defendants have received compensation and no longer have any injury.

91. Double recovery is specifically prohibited in Virginia (Va. Code §8.01-147) and by the Supreme Court (<u>Summers, et al. *v*. Earth Island Institute</u>, 555 U. S. \_\_\_\_ (2009)(Slip Opinion No. 07–463, March 3, 2009).

92. Plaintiff therefore seeks a declaration that the title to the subject property is vested in plaintiff alone, free of the liens of the Deeds of Trust, and that the Defendants herein be declared to have no estate, right, title or interest in the subject property and that said Defendants be forever enjoined from asserting any estate, right, title or interest in the subject property adverse to Plaintiff herein, and award reasonable attorney's fees and costs.

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order Quieting Title in the name of Plaintiff alone, and award reasonable attorney's fees and costs. Plaintiff also demands injunctive relief or a temporary restraining order stating: that any unlawful detainer proceedings in Prince William County are stayed until this Court is satisfied that the proper party declared a default, removed/appointed substitute trustees, accelerated the Note, and invoked the power of sale.

**COUNT V**
(<u>VIOLATION OF THE FDCPA</u>)
Fair Debt Collection Practices Act ("FDCPA")
15 U.S.C. § 1692 et seq. (2000)
(Versus Defendants Equity and Countrywide)

93. Plaintiff realleges and incorporates all previous paragraphs as if stated fully herein.

94. Without the authority to so act, Defendants Equity and Countrywide engaged in practices that violate the Fair Debt Collection Practices Act, as these Defendants do not have the right or authority to enforce the obligation, or in the alternative, the obligation has been extinguished, satisfied, or has been split from the Deed of Trust resulting in an unsecured Note.

16

95. In the alternative, were Defendants Equity and Countrywide acting at the behest of another unknown entity, their actions are still in violation of the FDCPA as that entity does not have the right or authority to enforce the obligation, or in the alternative, the obligation has been extinguished, satisfied, or has been split from the Deed of Trust resulting in an unsecured Note, or was acquired by said entity after an alleged declaration of default without consideration.

96. At all relevant times hereto, Equity and Countrywide were "debt collectors" having purportedly purchased or received assignment of the debt, or servicing a purported owner of the debt, or acting at request of some other entity, while it contended it to be in default.

97. Equity and Countrywide violated the FDCPA in one or more of the following ways, without limitation:

    a.    By misrepresenting the character of the debt (15 U.S.C. §§1692(e) and (f));

    b.    By misrepresenting the legal status of the debt (15 U.S.C. §§1692(e) and (f));

    c.    By misrepresenting the compensation which they could lawfully receive (15 U.S.C. §§1692(e) and (f));

    d.    By threatening action to foreclose upon Plaintiffs' real property when such action was not lawful and/or at a time when Defendants were not authorized to take such action (15 U.S.C. §§ 1692(e) and (f));

    e.    By collection of amounts in the debt not authorized by the loan or by law (15 U.S.C. §1692(f));

    f.    By failing to cease collection of the debt upon written notice that the debt was disputed (15 U.S.C. §1692(f));

    g.    By failing to cease communication with the Plaintiffs when it learned they were represented by an attorney (15 U.S.C. §§1692(c) and (d);

      h.      By failing to provide the warnings, disclosures and notices required by the FDCPA (15 U.S.C. §1692(e)).

98. As a result of the FDCPA violations, the Plaintiff has suffered substantial, actual damages including but not limited to his loss of money, emotional and mental pain and suffering, humiliation and embarrassment.

99. Plaintiff is entitled to actual damages, statutory damages, emotional distress, and attorneys' fees and costs of litigation under the FDCPA.

WHEREFORE, Plaintiff respectfully requests that this court award statutory, compensatory and emotional damages under Fair Debt Collection Practices Act against Defendants Countrywide and Equity, each for its own actions, and award him reasonable attorney's fees, costs, and punitive damages.

**COUNT VI**
(VA Code §8.01-428 - Void Judgment Obtained by Fraud)
Or in the alternative: Injunction Against the Efforts to Foreclose / Evict
pursuant to unlawful detainer as a form of relief in Plaintiffs' other Counts.
(Versus Defendants Countrywide and Equity)

100. Plaintiff realleges and incorporates all previous paragraphs as if fully stated herein.

101. This action will determine the rights of the parties to the Property.

102. Defendants Countrywide and Equity have executed a Deed of Substitute Trustee stipulating therein the following:

> WHEREAS, said Deed of Trust provides that the holder of the Note shall have the power and authority to appoint, by instrument duly executed, acknowledged, and recorded among the Land Records aforesaid, substitute trustee(s) in the place and stead of the trustee(s) named therein;

103. The aforementioned stipulation contained in the Deed of Substitute Trustee is nowhere to be found on the Deed of Trust.

104. Based on such misrepresentations, the Defendants Countrywide and EQUITY, fraudulently misrepresented and ascertained their authority to conduct a foreclosure.

105. The Deed of Trust mentions only the "Lender" as having any such authority.

106. Defendants, by their misrepresentations and without establishing their standing, or demonstrating to the Plaintiffs, and the Judicial system and the Courts of the Commonwealth of Virginia, that Defendants are the true parties in interest, have fraudulently set themselves up as having the right to commence or effectuate foreclosures in the Commonwealth of Virginia.

107. Defendants, by their misrepresentations and without establishing their standing, or demonstrating to the Plaintiffs, and without worrying or attempting to preserve the sanctity of the Commonwealth of Virginia's Land Recording System and Land Records, have falsely, inaccurately and fraudulently set themselves up as having the right to commence or effectuate foreclosures in the Commonwealth of Virginia.

108. In submitting sworn and notarized documents to the Land Records of the Circuit Court, Defendants Countrywide and Equity have perpetrated a fraud upon the Plaintiff, the Court, and the residents of this County.

109. An unlawful detainer action will be filed against Plaintiff. In that action, the Plaintiff will rely on Va. Code §8.01-389, and request that the Court accept all recitations in the clerk certified copy of the Deed of Sale as true. This section of the Code creates a rebuttable presumption of the truth in clerk certified, recorded documents.

110. However, in an unlawful detainer case following a foreclosure, the Court has limited jurisdiction and may not "look behind title." The end result is a judgment for possession in the General District Court, or on appeal in the Circuit Court, based on fraudulent documents placed in the land records by Countrywide and Equity.

111. The Deed of Sale and the judgment for possession, if any, were obtained by fraud, and pursuant to Va. Code §8.01-428 may be voided.

WHEREFORE, Plaintiff respectfully requests that this Court void the Deed of Sale and any judgment for possession obtained in the state court.

JOHN HORVATH, SR.

By Counsel,

Brown, Brown & Brown, P.C.

By: _/s/ Christopher E. Brown_____
Christopher E. Brown, VSB#39852
R. Michael Smith, VSB#13493
6269 Franconia Rd
Alexandria, Virginia 22310
703.924.0223
Fax 703.924.1586
brownfirm@lawyer.com
*Counsel for Plaintiff*